United States Court of Appeals for the Ninth Circuit is now in session. You may be seated. Good morning, ladies and gentlemen. We're here for the final day of arguments this week, and the first case on the oral argument calendar is Bax v. Doctors Med. Ctr. of Modesto. You may proceed. Good morning, Your Honors. My name is David John Hummel, and I represent the appellants, Mark and Lucia Bax. I will keep my eyes on the clock, but I would like to request three minutes for rebuttal. There are three main points that I would like to address. But first, the issue in this case is whether DMC, that is Doctors Medical Ctr. of Modesto, violated the Bax's civil rights by failing to provide a like experience and by failing to provide sign language interpreters. The three points to address are, first, a binding admission that DMC was aware that Mark Bax wanted an ASL interpreter. Second, the like experience standard that I referenced. And third, what is known as the primary consideration standard, which should apply under the Unruh Act. To begin with the binding admission, there was an admission in this case that DMC was aware throughout Mark Bax's October and November 2015 hospitalizations that he wanted an ASL interpreter. Thus, that matter is conclusively established, and the district court was bound to accept it. But there is no discussion of that admission in the district court's decision. And the reason this admission is important is through the some odd 40 pages of findings of fact that the district court issued, there is repeated reference to whether or not Mark Bax requested an interpreter or not. In particular, if you look at volume two of the appendix, pages 39 and 60 are good examples. On pages 39, there is a section entitled Summary of Interpreter Services During Mr. Bax's October Hospitalization. And the district court sums up, though Mr. Bax claims that he requested an interpreter every day during the 15 days of his hospitalization in October 2015, the court finds that he requested in-person interpreter services on eight of those days. Likewise, looking at page 60 of volume two, the district court notes the only instance in which Mr. Bax established that he had requested an interpreter and DMC did not in turn request one was a Medicare notice. And one other example on page 60, the district court notes, given the several instances in which Mr. Bax explicitly requested an interpreter, the reasonable inference to be drawn is that if Mr. Bax was dissatisfied with alternative means of communication, he would have expressed that discontent. But the purpose of requests and complaints are merely a signaling function. It's to tell the covered entity, hey, I have a disability, this is the accommodation that I need or prefer, and that's to let the covered entity know what their responsibilities are. That request or complaint is not required when there is a binding admission in this case when DMC already knew that he wanted an ASL interpreter. That is something the district court did not consider. And another dispositive point the district court did not consider. Isn't the question, though, whether there was effective communication? So even assuming that Mr. Bax requested an interpreter, can you move to the argument as to whether there's evidence that communication was in fact ineffective? Absolutely. Another point that the district court did not consider is technical assistance by the Department of Justice, which this court has held is entitled to controlling weight unless it's plainly inconsistent with the regulation. That is an argument that DMC did not raise. And when you look at this technical assistance, for example, it's cited on pages 34 and 35 of our opening brief. The Department of Justice describes equally effective communication as, quote, whatever is written or spoken must be as clear and understandable to people with disabilities as it is for people who do not have disabilities. More specifically on page 35, the DOJ explains for brief or simple face-to-face exchanges, very basic aids are usually appropriate. For example, exchanging written notes may be effective when a deaf person asks for a copy of a form at the library. But for more complex or lengthy exchanges, more advanced aids and services are required. And that's important. Not suggested, but required. So when someone's primary language is American Sign Language, like the Bax's, and they require American Sign Language interpreters to navigate their health care, the district court failed to consider this DOJ technical assistance that the means of providing equally effective communication is through sign language interpreters. And relatedly, turning to my second point, the like experience standard, one point of agreement between the parties comes at page 46, footnote 15 of DMC's brief, where DMC states, quote, a covered entity has an affirmative duty under section 504 to provide individuals with disabilities the equal opportunity to participate in its services as opposed to relying on the individual to continuously raise a communication difficulty. Now, this is very important because DMC acknowledges that it has an affirmative duty once it learns that Mr. Bax is deaf, once it learns that Mr. Bax and Mrs. Bax require interpreters when they are patients or companions to one another to effectively communicate and receive equal participation. There's no dispute between the parties that their primary language is American Sign Language. That comes from the third sentence of the first page of DMC's brief, where they even note that. And if you look throughout the record in volume seven of consent forms, for example, on page 658 of the record, as well as page 651 as another example, these are consent forms which state, quote, I have accurately and completely read the foregoing document to blank in the patient's or patient's representative's primary language. And that's very important. The Baxes merely want the same experience that other patients have. For example, we spoke to ADA coordinator Janice Hollering at trial, and she testified, for example, if a patient's primary language was Spanish, the hospital would still use a Spanish interpreter, even if that patient knew a little bit of English. Now, that was true even if the patient knew that little bit of English for their diagnosis, their prognosis, patient education, and medication dosage. That comes from volume three of the appendix. Page 276 is where that colloquy takes place. Now, shifting to the third point, the primary consideration standard, this is an independent theory of liability that could be dispositive in this case. To take a quick step back, under Title II of the ADA, which of course applies to public entities, those entities have a primary consideration obligation. That means they must honor the person's choice of accommodation, or show that there is an undue burden, or finally, show that they provided an equally effective means of communication. Now, by comparison, under Title III for public accommodations, like DMC, there's normally an encouraged consult with standard, that they should, but they're not required to consult with the individual. However, when you look at the language of the UNRU Act, California Civil Code, Section 51, Subsection F, it states, a violation of the right of any individual under the Federal Americans with Disabilities Act of 1990, then in parentheses, Public Law 101-336, shall also constitute a violation of this section. Now, if there were any doubt about that language, when you go to Public Law 101-336, that contains both Titles II and III. So, in other words, a violation of the right of any individual under Title II or Title III, shall also constitute a violation of the UNRU Act. And that's very important, and the District Court did not even consider whether primary consideration applied through the UNRU Act. But primary consideration would shift the burden to DMC. Once they were aware, through the binding admission, that Mark Bax wanted an ASL interpreter, it would then be their burden to show that they provided an equally effective means of communication, or honored that choice. And the reason there are only those two options is because there is no evidence of undue burden in this case. So, for all the instances in the record in which an interpreter was not provided, they would have the obligation to show, we provide an equally effective means of communication. And they cannot do so because the Department of Justice's regulation is talking about note writing. Now, to even sum this up, when you go to our opening brief on pages 20-22, we have a chart detailing when interpreter services were requested and when interpreter services were provided. Then, following on pages 23-25, we have a delineated chart showing on which days there were no provision of interpreter services. We discussed the communication method used and the communication at issue. So, all the district court would merely need to do is tally up these violations, and the Baxes would automatically be entitled to damages on the UNRU Act, which have statutory damages of a minimum of 4,000 or a maximum of three times the actual damages. Now, if there are no further questions from the court at this time, I will save the remaining of my time for rebuttal. Thank you, counsel. Thank you. We'll hear from DMC. Good morning, Your Honors. Jeff Polsky for Defendant and Appellee, Doctors Medical Center of Modesto. I'm going to start out with a confession. Like many lawyers who occasionally try cases, I'm more likely to sing the praises of trial judges who rule in my favor. But even being mindful of that bias, I have to say, Judge Droz did a great job here. He resolved numerous factual disputes, including the extent to which plaintiffs needed auxiliary aids, the extent to which defendant provided auxiliary aids, and the effectiveness of those auxiliary aids. He also assessed the reliability and credibility of nine witnesses, which he was in a unique position to do, and determined to what extent their testimony was consistent with the 132 exhibits, including voluminous medical records. And he did all this while managing a ridiculous caseload, which he notes in a footnote explaining why it took a year and a half to get a decision out. So yes, I will sing Judge Droz's praises. I think he did great. In terms of the issues raised by appellant, many of them are factual issues, and that means they would need to show clear error. As U v. Idaho State University 15F4 at 1241-42 notes, reversal is appropriate only if the district court's findings are clearly erroneous to the point of being illogical, implausible, or without support in inferences from the record. In their opening briefs, plaintiffs don't specify what factual issues they're disputing. They present their version of the facts, which is a version of the facts that Judge Droz carefully considered in determining that they had not carried their burden proof. Plaintiffs' appellants conveniently omit the fact that Judge Droz determined that they were not credible witnesses. At two excerpts of record, page 16, he notes, quote, The court not only finds the Baxes to be poor historians with contradicting and inconsistent accounts of what happened during their hospitalizations, the court also questions the credibility of the Baxes for the reasons described herein. And he makes similar observations at two excerpts of record, pages 34, 40, 44, 51, and 63. Judge Droz based these determinations, as he explains in his order, on inconsistencies between their deposition and trial testimony, discrepancies within their trial testimony, and observations of their demeanor. So it's not enough for plaintiffs simply to repeat their versions of events in the trial brief, a version which Judge Droz rejected. They needed to specify in their opening brief which specific factual determinations they contended were clear error. And they didn't do that. But they did it in their reply brief and in their oral argument here today. So while we contend they waived it, let me address that. And the first argument they make is that the court placed too much weight on defendants' responses to requests for admissions. The request for admission, which they're talking about, and the response is at five excerpts of record, page 522. DMC objected to that request in their response on the basis of vagueness. And I think the objection is well taken. But second, look at the text of the request and the response. The request asked defendant to admit that, quote, All that DMC admitted was that it was aware that Mr. Bax wanted an interpreter. He didn't admit that DMC was aware that he wanted an interpreter for every interaction. But the hospital was aware that he wanted an interpreter for some interactions because he asked for an interpreter on occasions. That's all that the defendant admitted here. Appellants are asking you to interpret that as an admission that Mr. Bax wanted an interpreter for every interaction. And that's not what the response says, even if it were what the response said. And again, it's not. The law is clear that a hospital is not required to provide in-person interpreters for every interaction. That comes from Silva, 856F3 at 835 and 836, where the court notes, And the court goes on to note at page 836, is well within its ADA and Rehabilitation Act obligations to rely on other alternatives. This comes from the regulations at 28 CFR 36.303C1, lowercase double I, which says, So the ultimate question is not whether Mr. Bax wanted an interpreter, but whether the auxiliary aids that DMC provided were sufficient to ensure effective communication. Judge Droz reviewed that issue in painstaking detail, determining that plaintiffs did not carry their burden of proof. There is no clear error to justify overturning that. They also argue that the court placed too much emphasis on Mr. Bax's failure to contemporaneously request interpreters for some interactions. According to their reply at page 1, it was, That's not accurate. The court didn't rely exclusively on the failure to request interpreters. It was one of the factors that the court looked at. And you can see this if you, I'll give you examples, but the question the court was looking at was, were the auxiliary aids provided sufficient to ensure effective communication? And one of the factors the court looked at is whether Mr. Bax said, what you're providing me is not sufficient. It was one of the factors. In their briefing, appellants cite October 14 as an example. If you look at the court's finding of fact for that date, which is at two excerpts of record 18, the court said, Nor did Mr. Bax testify that he informed DMC of this limitation. Whereas the medical record does state that Mr. Bax had verbalized his understanding of the patient education and demonstrations. Accordingly, in light of that patient education record and Mr. Bax's inconsistent testimony regarding how he requested interpreters, the court finds by a preponderance of the evidence that Mr. Bax did not request an interpreter on October 14, 2015. In addition, Mr. Bax did not present any evidence at trial suggesting that his communication with DMC staff via written notes on October 14, 2015 was ineffective, or that he had informed DMC staff that he felt communicating using written notes was ineffective for him. That's just an example of the trial court's analysis. It is not based solely on whether he asked for an interpreter. That is not the centerpiece of the trial court's decision. It's one of the factors that the court looked at, and there is no clear error there. In terms of the UNRWA Act claim, the court determined that plaintiffs failed to establish an ADA violation, which is a prerequisite to establishing a violation of the UNRWA Act. As Whitaker v. Tesla Motors, 985 F. 3rd, 1173 at 1175, this is a 2021 Ninth Circuit decision notice, the UNRWA Act is coextensive with the ADA. Thus, our analysis of Whitaker's ADA claim applies equally to his UNRWA Act claim. Here, on this theory, plaintiffs argue that they've shown liability because they've identified multiple interactions where DMC did not provide an interpreter. By providing an interpreter, you mean a live ASL interpreter? Yes. Okay, thanks. Thank you for that clarification. Again, that's not required for every interaction. Again, Judge Droz went through each interaction in painstaking detail, analyzed the evidence, and based on his factual determinations, including his credibility determinations, determined that plaintiffs had not carried their burden there. If plaintiffs can't show that DMC violated the ADA, then they can't show that DMC violated the UNRWA Act. I also want to point out that it had already been determined on summary judgment, which was not appealed, that plaintiffs had no evidence of intentional discrimination under the UNRWA Act. But finally, I want to look at the wording of the second issue they raised on appeal, that there was a legal error. The issue as they phrase it, both in their opening and reply briefs, is whether appellants are entitled to judgment as a matter of law because the district court failed to apply the correct legal standards. Not whether they're entitled to a new trial, but whether the record permits this court to order a judgment in their favor. They have not made that shown. The judge applied the correct law. There is no showing of clear factual error sufficient to overturn this decision. There's no showing of legal error. For these reasons, Defendant Doctors' Medical Center Modesto respectfully requests this court to affirm the district court's judgment. If the admission is construed hypothetically broadly, what does that do to your case? Because what the admission was, admit defendant was aware that Plaintiff Mark Bax wanted an ASL interpreter. There's no qualification that he didn't want for every interaction. We were responding to the request as phrased, which did not say for every interaction. But even if it is construed broadly, what the plaintiff appellant wants and what the hospital is obligated to provide are two different things, especially given the regulation, which I cited, 28 CFR 36.303C12, that the ultimate decision as to what measure to take rests with the public accommodation. Is there some baseline? Are there some types of interactions for which note writing would just be per se inappropriate? I think it's going to depend on the particular plaintiff and their skills and abilities and the extent of their disability. I think there are some plaintiffs for whom note writing may be an effective means of communication. But the issue here is whether the plaintiffs showed at trial that note writing was not effective for the communications in which it was used here, and the court ruled that the plaintiffs did not carry their burden there, and there is no clear error in that determination. Would you address the primary consideration argument? Yes. The law, the primary consideration as we see it, became an issue when the ACCA regs were issued. Let me just find that here. Yes, there were regulations that took effect on July 17, 2016, 28 CFR section 35160B2, which state, in determining what types of auxiliary aids and services are necessary, a public entity shall give primary consideration to the request of individuals with disabilities. That regulation was enacted after Mr. Bax was discharged from the hospital. Plaintiffs have argued that it should be applied retroactively, but Judge Stroh has correctly determined that it should not be. Even if you do give primary consideration, as the reg goes on to explain, that doesn't mean that there's a violation. At that point, the burden of proof would shift to the public entity to prove that the auxiliary aid or accommodation it provided was effective. Is your position that you are not a public entity? We are not a public entity, correct. So it wouldn't apply anyway to you? Title II, yes. Title II would not apply to a private entity. Thank you, counsel. Thank you. We'll hear rebuttal. Yes, thank you, Your Honor. I would like to return to the three main points that I said at the outset, the binding admission, the like experience, and the primary consideration standard under the UNRU Act. My friend on the other side mentions that we introduced the binding admission in our reply papers and we waived the argument. That is not true. You go to our opening brief, page 15. Under the argument section, our very first heading states that this report's factual findings contain clear error. Our first subsection is about the binding admission itself. There was no qualification with the binding admission. There was no objection at trial to the introduction of the binding admission. There is no qualification whether or not it was for one point in time or all points in time. In fact, on page 29 of the answering brief, they even assumed as much. Page 29, footnote 7 just merely states, the standard is not whether Mr. Bax wanted an ASL interpreter throughout his hospitalizations. There's no defense in the answering brief that, well, we conceded to one point in time that he wanted an interpreter, but not all points in time. And the reason they likely did not do so is when you look at the record, even the medical record itself and disregard the Bax's testimony, there is repeated instances in the record in which medical staff note that the Bax's wanted interpreter services. Now, the logical consequence of accepting DMC's argument is that if a patient knows English, if a patient does not self-advocate for their civil rights at every turn, they are forfeiting those rights. But turning to the like experience, that cannot be the standard. For example, this court considered a wheelchair-bound patron going to a movie theater, and certainly that patron would be entitled to sit somewhere other than the first row. That patron would be entitled to sit with family members and friends. Merely seeing the movie is not the end goal. You want to create a full and equal enjoyment of services, and that's merely what the Bax's are asking for. But didn't the district court make that analysis? The district court reviewed for each of these interactions whether communication was actually effective and found that the Bax's had not proved that it wasn't. Isn't that what the district court did? Not precisely because the district court tied together the proof of ineffective communication with whether or not the Bax's complained, drawing the inference that if the Bax's were dissatisfied with the accommodations, they would have complained as much because they have it on different points. Why wasn't the court entitled to consider that, I mean, I guess amongst the totality of the circumstances, or as one of several factors that it considered? It could have been one of several factors if not for that binding admission. That binding admission tells the district court, even though the district court didn't discuss it, that Mark Bax wanted an interpreter throughout both his October and November hospitalization. So there's no inference to draw that because Mark Bax failed to request an interpreter, he presumably was happy with the services he wanted. One important example is the Medicare form on October 26th, which is shown on page 714 of volume 7, in which Mark Bax explicitly told a medical staff member he did not want to sign a form without an interpreter. That in and of itself is a violation. The district court merely rejected it simply because he signed some version of that form on an earlier date. Mr. Homel, I'm trying to understand your point. Is your point that once having admitted that Max Bax wanted a live ASL interpreter, the hospital is obligated to provide such a person, such an interpreter, at all times, no matter what their resources are? No, of course not. If DMC provided evidence of its financial budget that we could not afford an interpreter for these times, that is a defense they could raise. It's a defense they didn't raise. And, Your Honor, I just want to clarify the point of live interpreter versus video remote interpreter, which was at issue in this case. There's no evidence that Mark Bax categorically refused video remote interpreters. There's simply instances in the record which the district court, in fact, credited that the VRI connection was slow in providing ineffective means of communication. It's not as if Mark Bax folded his arms and said, I will not accept VRI at any turn. He merely said that there are connectivity issues that is preventing him from enjoying the services. Now, turning to the Unruh Act, the primary consideration standard, my friend on the other side mentions ACA regulations, but that is a red herring. The important regulations are those from Title II which the ACA adopted. We don't need to concern ourselves with the ACA. The Title II regulations existed before this case. And my friend on the other side hasn't addressed how subsection 51F doesn't encompass both Titles II and III of the ADA for any Unruh Act violation. And with the like experience standard, with the primary consideration standard, DMC would have needed to show that using note writing, for example, which is a stunted, choppy form of communication, it prevents contemporaneous exchange of information between doctors, nurses, and the Baxes, would have been as clear and understandable as an interpreter in their primary language. For that reason, we ask this Court to reverse and remand. Thank you very much. Thank you, Counsel. Thank you both for your arguments this morning. The case just argued will be submitted for decision.
judges: THOMAS, BEA, THOMAS